(Decided 15th November, 1889.)

·Jackson Holland *vs.* Richard H. Lee, Henry Heaton, Charles E. Stuart, and Robert T. Barton, special Commissioners, &c.

*Bonds given by Individuals for Purchase of a Railroad by them under the Virginia Code, ch. 61, secs. 44 and 47—Individual liability therefor—Consideration.*

By the statutes of Virginia (Code, ch. 61, secs. 44 and 47) it is provided that where a sale is made of the works and property of a company under a deed of trust, mortgage or decree, the conveyance to the purchaser shall pass to him all the property of the company, other than debts due to it, and that "upon such conveyance to the purchaser the said company shall *ipso facto*, be dissolved, and the said purchaser shall forthwith be a corporation by any name which may be set forth in the said conveyance, or in any writing signed by him." By the decree of a Circuit Court of Virginia, certain persons were appointed commissioners to make sale of the property and franchises of a railroad corporation located in that State, and sold the same to L. by whom said purchase was assigned to B. The decree confirming said sale directed that "the aforesaid commissioners shall execute and deliver to B. and to such persons as may be associated with him, a deed for the property sold  *  *  *  *  and that said B. and such persons as may be willing to sign the same, shall

execute to the aforesaid commissioners their individual bonds, which shall be secured by a lien reserved in the conveyance." The bonds so required, which were for the unpaid purchase money under said sale. were executed by B. and eight other persons in favor of said commissioners as such. On the day of the date of these bonds the commissioners conveyed the railroad and its franchises to the said B. "to hold unto the said B. and such associates as he may associate with him under the name of the W. and W. Railroad Company," subject to a "lien for all the unpaid purchase money as represented in the four bonds of the said B. and others," each for the sum, specifying it, with interest, &c. When the first of these bonds fell due, default was made, and under further proceedings in the Circuit Court in Virginia, the railroad was resold to O. & Bates, and was conveyed to them under the name of W., O. & W. Railroad Company. The proceeds arising from this sale were applied towards the payment of the four bonds of B. and his associates, but a balance was left due on the bonds. after such application. On a suit brought in Maryland against all the makers of the four bonds, to recover this balance, together with interest thereon, it was HELD:

1st. That at the moment these bonds were given, they were the individual obligations of the persons who signed them, and the fact that they, as purchasers of said railroad. became a corporation under the Virginia statute upon the execution and delivery of the deed to them, could not change the character of the debt which they personally incured before the creation of that corporation, or fasten it upon the corporation, and discharge the original obligors from the payment of it.

2nd. That the purchase of the railroad by the obligors was the consideration for said bonds. and the conveyance of the property to a corporation of which the purchasers were the members did not defeat or destroy that consideration.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*Samuel Snowden,* and *Bernard Carter,* for the appellant.

*H. O. Claughton,* and *John T. Mason, R.,* for the appellees.

McSHERRY, J., delivered the opinion of the Court.

By a decree of the Circuit Court of the City of Richmond, in the State of Virginia, passed on the 23rd day of April, 1880, in a foreclosure proceeding wherein Henry Lewis and others were plaintiffs, and the Washington and Ohio Railroad Company, and others, were defendants, Richard H. Lee, Henry Heaton, Charles E. Stuart and Robert T. Barton were appointed commissioners to make sale of the property and franchises of the Washington and Ohio Railroad Company—a corporation located in the State of Virginia.    The terms of sale prescribed were $50,000 cash, and the residue in four equal annual payments, to be evidenced by the bonds of the purchaser, secured by a deed of trust upon the property sold.    On the 31st of January, 1882, the commissioners sold the property to Cazenove G. Lee for the sum of $592,000. The purchaser having failed to comply, subsequent proceedings were had, whereby the time for the performance by him of the terms of sale was extended till May 26th, 1882.    On May 24th, Cazenove G. Lee paid the cash payment, and gave his bonds for the deferred payments. After the sale to Lee, he assigned his purchase to William J. Best, and the Circuit Court on May 25th, 1882, confirmed the sale made on January 31st to Lee; but as Lee desired "that the sale should be confirmed to the said Best, for himself and such persons as he might thereafter associate with him," it was, by the said decree confirming said sale, directed that "the aforesaid commissioners shall execute and deliver to William J. Best, and to such persons as may be associated with him, a deed for the property sold,   *   *   *   *   and that said William J. Best and such persons as may be willing to sign the same, shall execute to the aforesaid commis-

sioners *their individual bonds*, which shall be secured by a lien reserved in the conveyance.'' Best delivered to the commissioners four bonds each for the sum of $135,500, and each executed by himself and eight other persons, of whom the appellant was one, which bonds the commissioners received in exchange for those previously given by Cazenove G. Lee. The bonds are in the form following, to wit:

"$135,500.00.                              May 25th, 1882.

"On the 31st day of January, 1883, we promise to pay to R. H. Lee, Henry Heaton, C. E. Stuart and R. T. Barton, special commissioners in the cause of *Henry Lewis, et als. vs. The Washington and Ohio Railroad Company*, the sum of one hundred and thirty-five thousand and five hundred dollars, with interest thereon from the 31st day of January, 1882; a lien for which sum is reserved in a deed of conveyance, this day executed by said commissioners to the obligors hereto. Witness our signatures and seals, this 25th day of May, 1882." Signed and sealed by William J. Best and eight others, including the appellant. On the day of the date of these bonds the commissioners conveyed the railroad and its franchises to the said Best, "to hold unto the said William J. Best and such associates as he may associate with him, under the name of the Washington and Western Railroad Company" subject to a "lien for all of the unpaid purchase money, *as represented in the four bonds of the said William J. Best, and others*, each for the sum of $135,500 with interest from January 31st, 1882."

When the first of these bonds fell due, default was made, and under further proceedings had in the Circuit Court of the City of Richmond, the railroad was resold on May 9th, 1883, to Oakman and Bates for $400,000, and on May 23d, was conveyed to them under the name of the Washington, Ohio and Western Railroad Com-

pany.   The proceeds arising from this resale were applied towards the payment of the four bonds of Best and his associates.   When these proceeds were credited on the Best bonds a balance was left due thereon, January 31st, 1885, of $203,180.57.   To recover this balance, together with interest thereon, suit was brought in the Superior Court of Baltimore City, against all the makers of the four bonds.   The sheriff returned the writ served upon the appellant, and *non sunt* as to the others, they being non-residents of this State.   The appellant appeared and made defence.   Judgment was rendered against him and from that judgment he has taken this appeal.

The grounds upon which he claims a reversal of the judgment are these:  First, that the bonds sued on, though signed by Best and eight other obligors, including the appellant, are not the obligations of the persons who signed them, but are the debts of the Washington and Western Railroad Company ; and, secondly, that there is no evidence that any part of the consideration for these obligations was ever received by the parties who signed them, and that, therefore, the appellant is not bound upon them.

At the moment these four bonds were given they were undeniably the individual obligations of the persons who signed them.   By the decree of May 25th, 1882, confirming the sale of January 31st, Best "and such persons as may be willing to sign the same," were required to execute "*their individual bonds*" to the commissioners for the deferred payments, and in the conveyance a lien was reserved "for all of the unpaid purchase money, as represented in the four bonds *of the said William J. Best and others.*"   These parties were the purchasers of the railroad, and the bonds were given by them for the unpaid purchase money in conformity with the requirements of the decree.   It is manifest they were not, when given, the bonds of the Washington and

Holland *vs.* Lee, *et al.*

Western Railroad Company, because that corporation was not then in existence. If they ceased at any time to be the obligations of the persons who signed them, and became the obligations of the new company, the corporate liability of a company created after that personal liability had been assumed, and assumed, too, under the decree referred to, must have been substituted, by some process, for the personal liability of the individual obligors. Unless such a substitution has taken place, the bonds, of course, continue to be what they were when executed. Let us see, then, whether such a substitution or exchange did in fact occur.

By the statutes of Virginia, (*Va. Code, ch.* 61, *sec.* 44,) it is provided, in substance, that where a sale is made of the works and property of a company under a deed of trust or mortgage, or, according to *sec.* 47, under a decree, the conveyance to the purchaser shall pass to him all the property of the company, other than debts due to it, and that "upon such conveyance to the purchaser the said company shall, *ipso facto*, be dissolved; and the said purchaser shall forthwith be a corporation by any name which may be set forth in the said conveyance, or in any writing signed by him," &c. Now, the argument is, that under this statute the instant the deed was made, the purchasers, who up to that time were individuals, became a corporation; that "his *personality* and *individuality* is lost and merged in his corporate capacity; whatever existence he may have as a person or individual for other purposes, in his capacity as purchaser of the property he becomes a corporation, and all the duties he has to discharge as a purchaser he discharges as a corporation." Therefore "the credit payments of the purchase money which as purchaser he has agreed to pay he owes only as a corporation, and not as an individual." because "his only obligation to pay the purchase money is because he is purchaser." But this does not meet the

point. Though the purchasers became a corporation under the statute upon the execution and delivery of the deed to them, that fact could not possibly have changed the character of the debt which they personally incurred *before* the creation of that corporation. The argument assumes that the creation of the corporation discharged the obligations which the purchasers as purchasers, and therefore as individuals, gave, and made the bonds the debt of the corporation, though the corporation never incurred it. It assumes that the individuals have been released, and that the corporation has been made liable, though the former appear on the face of the bonds as the obligors, and actually contracted the debt, and the latter does not so appear, did not contract the debt, and was not even in existence when the debt was in fact contracted. Upon the creation of the corporation the purchasers of the property ceased to hold that property as individuals, and to that extent their personality was merged in their corporate capacity; but it by no means follows from this that all the duties which the purchasers had to discharge as purchasers could only be discharged by them as a corporation. These obligors were not a body corporate when they executed these bonds. As individuals they could lawfully buy the railroad. When they bought it they gave their individual obligations for the deferred payments. They could not operate the road as individuals, and hence they were formed into a corporation, under the statute, when the deed was executed and delivered. But the debt contracted for the purchase still remained what it originally was, their individual undertaking; and there is nothing in the statute of Virginia which changed the character of that indebtedness, or fastened it upon an after created corporation, and discharged the original obligors from the payment of it. It is very evident the Circuit Court of Richmond did not so understand the transaction when it

directed by its decree that these *"individual bonds"* should *"*be secured by a lien reserved in the conveyance.*"* Upon the theory advanced by the appellant, the commissioners, after conveying the property, would have had no security whatever for the deferred payments other than the very property which they had just before sold. In other words, they would have accepted the obligations of a new corporation for those due by another corporation, whose existence ceased upon the making of the deed which called its successor into being. The only security for these new obligations would have been the very same property which had been also liable for the old indebtedness. Substantially, this would have been a mere change in the name of the debtor. We cannot gather from the records in the Virginia case the existence of any such intention on the part of the Circuit Court, the vendor, or on the part of the obligors, the purchasers of the Washington and Ohio Railroad.

No demand for payment was made upon the obligors personally when the first bond matured, but demand was made at the office of the Washington and Western Railroad Company in Alexandria. Payment having been refused, the resale proceedings were instituted, and notice was served only on the Railroad Company. It was urged that these facts indicated that the obligors were not regarded as personally liable. But the deed affords an all-sufficient answer to this suggestion. As already stated, a lien was reserved on the property, and in the deed it was "understood and agreed" that the lien "may be enforced in case of any default on the part of the *obligors* in the aforesaid bonds in their payment * * * * by a rule, &c., against the said purchaser W. J. Best, or whoever may be associated with him, or *whoever may be in the possession* of the property hereby conveyed," &c. The rule was served upon the railroad company, and the company was in possession of the property. This was all that was required under the terms of the deed.

A brief observation is all that is needed to dispose of the second ground of defence. These bonds were given for part of the purchase money of the railroad bought by W. J. Best and the other obligors. These obligors got precisely what they bargained for. There was therefore a consideration for the bonds, and the conveyance of the property to a corporation of which the purchasers were the members did not defeat or destroy that consideration. If the venture subsequently proved disastrous, the purchasers, though they failed to realize their expectations, cannot escape, on that ground, the payment of the purchase money which they bound themselves to pay.

Notwithstanding the extremely able and ingenious arguments of the learned counsel for the appellant, we are unable to view the case in any other light.

The demurrer to the defendant's pleas and the three prayers presented by the appellant raise the questions we have been considering; and, in our opinion, there was no error committed in sustaining the demurrer or in rejecting the prayers. The judgment must, therefore, be affirmed.

*Judgment affirmed.*

(Decided 15th November, 1889.)